## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff** | | |
| **v.** | : | **Civil Action No.** |
| **$28,700 in U.S. CURRENCY,** | : | |
| **Defendant** | | |

: : : : : : : : :

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, by its attorneys, Rod Rosenstein, United

States Attorney for the District of Maryland, and Evan T. Shea, Assistant United States Attorney,

brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the

Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.        This is a civil forfeiture action against U.S. currency that constitutes funds

involved in violations of 31 U.S.C. § 5324(a) that are subject to forfeiture pursuant to 31 U.S.C.

§ 5317(c)(2).

## THE DEFENDANTS IN REM

2.        The defendant property consists of **$28,700** in U.S. Currency (hereinafter, the

"Defendant Property").

3.        The Defendant Property consists of funds that were seized on March 20, 2012,

from PNC Bank account number ******8969 held in the name of "SUSHEEL SHUKLA and

SONIA SAINI."

4.        Since seizure, the Defendant Property has been and presently is in the custody of

the U.S. Department of Treasury.

## JURISDICTION AND VENUE

1

5.        Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 31 U.S.C. 5317(c)(2) and 18 U.S.C. § 981.

6.        This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon filing this complaint, the Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(B), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplement Rule G(3)(C).

7.        Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts and omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

## BASIS FOR FORFEITURE

8.        The defendant currency is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) because it was involved in violations of 31 U.S.C. § 5324(a)(3) which makes it an offense to structure currency transactions with a domestic financial institution for the purpose of evading the reporting requirements of 31 U.S.C. § 5313, and the regulations promulgated thereunder, and because it was involved in violations 31 U.S.C. § 5324(a)(1) which makes it an offense to cause a domestic financial institution to fail to file a report required under 31 U.S.C. § 5313 and the regulations promulgated thereunder.

9.        To the extent it is necessary to do so, Plaintiff intends to rely on the provisions of 18 U.S.C. § 984 to establish that the Defendant Property is the property involved in the violations of 31 U.S.C. § 5324 described in the attached affidavit.

## FACTS

2

10.          The forfeiture is based upon, but not limited to, the evidence outlined in the attached affidavit of Task Force Office John Matzerath of the Internal Revenue Service, which is incorporated herein by reference.

**WHEREFORE**, the plaintiff prays as follows:

1.          That any person or persons having any interest therein be cited to appear herein and answer the Complaint;

2.          That a Warrant of Arrest *in rem* issue to the Department of Treasury commanding the arrest of the defendant property;

3.          That Judgment of Forfeiture be decreed against the defendant property;

4.          That upon Final Decree of Forfeiture, the Department of Treasury dispose of the defendant property according to law; and

5.          That the plaintiff has such other and further relief as the case may require.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

11/27/13
Date

Evan T. Shea
Assistant United States Attorney
36 S. Charles Street
Fourth floor
Baltimore, Maryland 21201
Telephone (410) 209-4800

3

12-1284SAG to 12-1288SA

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, John Matzerath ("your affiant"), a Federal Task Force Officer for the Internal Revenue Service, Criminal Investigation Division ("IRS-CID"), being duly sworn, depose and state:

### BACKGROUND

1. Your affiant is a Federal Task Force Officer ("TFO") with IRS-CID and has served in that capacity since October of 2010. Your affiant is currently assigned to the Maryland Financial Crimes Task Force where my official responsibilities include conducting investigations of possible criminal violations of the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act (Title 18, United States Code), the Internal Revenue Code (Title 26, United States Code), and other related offenses. I am empowered by law to investigate and to execute search and seizure warrants, as well as make arrests, for offenses involving the structuring of currency deposits to evade the reporting requirements outlined in Title 31 of the United States Code.

2. While performing my duties, your affiant has participated in several investigations involving violations of Title 31 and Title 18 of the United States Code. Your affiant has participated in executing several search and seizure warrants related to these types of investigations.

3. Your affiant has successfully completed three training seminars conducted by the Department of the Treasury, the Internal Revenue Service, and the Department of Justice. The training included courses in criminal law, criminal investigative techniques, search and seizure warrants, financial investigative techniques, accounting, and tax.

4. Prior to being detailed as a Federal TFO, your affiant has been a member of the Baltimore Police Department since May 1995. Your affiant was assigned to the Criminal Investigation Division in January 2000. Your affiant was assigned to the Department's Asset Forfeiture Unit in February 2002. As a detective in the Asset Forfeiture Unit, your affiant conducted many proactive asset forfeiture investigations on individuals and businesses involved in narcotics distribution. Your affiant has authored and executed numerous State-issued search and seizure warrants resulting in the recovery of U.S. currency, illegal narcotics, weapons, vehicles, and real property.

5. Unless otherwise stated, the information in this affidavit is either personally known to your affiant or has been provided to your affiant by other law enforcement officers and/or is based on a review of various documents and records as more particularly described herein.

## OBJECTIVE

6. This affidavit is submitted in support of the Application made by the United States of America for a Seizure Warrant authorizing the seizure of United States currency from the following bank accounts[1]:

   a. $569,950 contained in PNC Bank ("PNC") account number 5563009167 held in the name of SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR;

   b. $28,700 contained in PNC account number 5560928969 held in the name of SUSHEEL SHUKLA and SONIA SAINI;

   c. $2,770 contained in Bank of America ("BOA") account number 446007781135 held in the name of SHUKLA LLC;

   d. $6,278.30 contained in BOA account number 446007811458 held in the name of AMANDEEP MULTANI.

   For the reasons stated herein, there is probable cause to believe that such monies are subject to seizure and forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(1) and (2), on the grounds that they constitute property involved in or traceable to cash deposits structured to avoid currency reporting requirements in violation of 31 U.S.C. § 5324(a)(1) and (3).

7. This affidavit is also submitted in support of the Application made by the United States of America for a Search Warrant on the premises located at 1108-1110 North Point Road, Baltimore, Maryland 21222. The description of the location is more particularly described in Attachment "A," incorporated herein. Your affiant submits that probable cause exists to believe that this location contains evidence, fruits, and instrumentalities of criminal offenses against the United States, to wit, violations of 31 U.S.C. § 5324 (a)(3), Structuring Currency Transactions to Evade a Filing Requirement, and 31 U.S.C. § 5324 (a)(1), Causing or Attempting to Cause a Financial Institution to Fail to File a Currency Transaction Report, and related offenses. The items to be seized are documents, records, computers and other evidence more particularly described in Attachment "B," incorporated herein.

## CURRENCY TRANSACTION REPORTS AND STRUCTURING

8. Title 31, U.S.C. § 5313 and 31 C.F.R. 1010 of the Bank Secrecy Act (BSA) require any financial institution that engages with a customer in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000 to report the transaction to the Internal Revenue Service on Department of the Treasury FinCEN Form 104, Currency Transaction Report ("CTR"). These regulations also require that multiple transactions be treated as a single transaction if the

---

[1] See paragraphs 51 and 52 for further explanation of the seizure amounts being requested.

financial institution has knowledge that they are by, or on behalf of, the same person, and they result in currency either received or disbursed by the financial institution totaling more than $10,000 during any one business day.

9. CTRs are often used by law enforcement to uncover a wide variety of illegal activities including narcotics trafficking, money laundering, and tax evasion. Many individuals involved in these illegal activities are aware of such reporting requirements and take active steps to attempt to cause financial institutions to fail to file CTRs. These active steps are often referred to as "smurfing" or "structuring."

10. As explained by the Fourth Circuit Court of Appeals in *United States v. Peterson*, 607 F.3d 975 (4th Cir. 2010), structuring can take several forms. Making multiple deposits of $10,000 or less into the same bank on the same day, with the total exceeding $10,000, is called "imperfect structuring" because the bank's obligation to file a CTR is triggered notwithstanding the customer's intent to evade it. Making multiple deposits into *different* banks on the same day, with no one deposit exceeding $10,000, but with the total being in excess of that amount, is called "perfect structuring" because no one bank has a duty to file a CTR. Imperfect structuring is a violation of 31 U.S.C. 5324(a)(1), and perfect structuring is a violation of 31 U.S.C. 5324(a)(3). *Peterson,* 607 F.3d at 981.

11. Not all structuring offenses involve breaking up sums in excess of $10,000 into smaller amounts on a single day. To the contrary, under 31 C.F.R. 1010.100(xx) a person may commit "serial structuring" if he or she deposits or withdraws $10,000 or less each day over a period of several days (or longer) with the intent to evade the reporting requirement. Serial structuring is a violation of 31 U.S.C. 5324(a)(3). *Peterson,* 607 F.3d at 979. *See United States v. Van Allen,* 524 F.3d 814, 820-21 (7th Cir. 2008).

12. In order to establish a violation of 31 U.S.C. § 5324(a), the government must prove that a person structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions for the purpose of evading the reporting requirements of section 5313(a) or any regulation prescribed under such sections.

## FACTS SUPPORTING PROBABLE CAUSE THAT STRUCTURING VIOLATIONS OCCURRED

13. SHUKLA, LLC ("SHUKLA LLC") operates a liquor/convenience store called NORTH POINT LIQUOR & BAR ("NORTH POINT") located at 1108-1110 North Point Road, Baltimore, Maryland 21222. SHUKLA LLC filed Articles of Organization in the state of Maryland on October 20, 2006. SUSHEEL SHUKLA ("SHUKLA") is the sole member of the LLC. According to the Articles of Organization, the purpose for which the corporation was formed is to

"engage in the business of Liquor, Beer, Wine, Retail, Convenience Store, Food Services, Real Estate and all related activities dealing with the sale of both Residential & Commercial real estate and to carry on any related business." On May 20, 2008, SHUKLA submitted a trade name application for the name NORTH POINT LIQUOR & BAR. The address where the trade name is to be used is listed as 1108-1110 North Point Road, Baltimore, Maryland 21222.

14. In January and February of 2012, your affiant conducted surveillance at NORTH POINT on multiple occasions and witnessed SHUKLA and another individual, later identified as HARJEET SINGH MULTANI ("H. MULTANI"), working at the store[2]. SHUKLA was seen writing on a notepad behind the counter inside the store while MULTANI was also seen behind the counter using a cash register machine to process customers' purchases.

15. Records provided by PNC indicate that PNC account number 5563009167 is a business checking account held in the name of SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR. The account was opened on January 26, 2011 and the authorized signors on the account are SHUKLA and H. MULTANI.

16. PNC account number 5560928969 is a personal savings account held in the name of SHUKLA and another individual believed to be SHUKLA's wife, SONIA SAINI ("SAINI"). The account was opened on January 26, 2011. SHUKLA and SAINI are the sole signatories on the account.

17. Records provided by BOA indicate that BOA account number 446007781135 is a business checking account held in the name of SHUKLA LLC. The account was opened on February 20, 2008 and the authorized signors are SHUKLA and H. MULTANI.

18. BOA account number 003921527135 is a personal savings account held in the name of SHUKLA and SHUKLA's wife, SAINI. The account was opened on July 9, 2010. SHUKLA and SAINI are the sole signatories on the account.

19. BOA account number 003921606137 is a personal checking account held in the name of H. MULTANI and another individual believed to be H. MULTANI's wife, AMANDEEP K. MULTANI ("A. MULTANI"). The account was opened on September 10, 2009 and the authorized signors are H. MULTANI and A. MULTANI.

20. BOA account number 446007811458 is a personal checking account held in the name of A. MULTANI. The account was opened on December 15, 2007. A. MULTANI is the sole authorized signor on the account.

---

[2] SHUKLA and MULTANI were identified based on their Maryland Motor Vehicle Administration ("MVA") driver's license photos.

21. Based on the information outlined in this affidavit, as well as my training, knowledge, and experience, it is your affiant's belief that the cash deposited into the six above-named accounts was acquired in amounts exceeding $10,000 and broken up into separate deposits in amounts less than $10,001, or was deposited in a series of transactions in amounts less than $10,001, in an attempt to evade triggering the CTR reporting requirement.

22. From January 1, 2010 through November 18, 2011, a total of 294 individual currency deposits totaling $1,923,591.30 were made into SHUKLA's and H. MULTANI's business and personal accounts. Attachment C is a schedule of the cash deposits made during this period of time and clearly shows the structured manner in which the deposits were made. For instance,

Of the 294 individual currency deposits that were made into the account,

    i.    None were equal to or exceeded the CTR reporting requirement threshold of $10,001;

    ii.    $9,900-$10,000 was deposited 88 times (29.9%);

    iii.    $9,000-$10,000 was deposited 114 times (38.8%);

    iv.    $8,000-$10,000 was deposited 134 times (45.6%).

- On 22 separate occasions, multiple cash deposits were made on the same day that, when aggregated, exceeded the $10,001 CTR reporting requirement threshold.

- On 54 separate occasions, cash deposits were made on consecutive days that, when aggregated, exceeded the $10,001 CTR reporting requirement threshold.

- On 20 separate occasions, cash deposits were made within a three-day period that, when aggregated, exceeded the $10,001 CTR reporting requirement threshold.

23. Attachment C reflects instances where cash was repeatedly deposited in amounts just below the CTR reporting requirement threshold (i.e. between $8,000 and $10,000). As mentioned in paragraph 11, such activity is often referred to as "serial structuring" and is a violation of Title 31 U.S.C. § 5324(a)(3) because by consistently keeping cash deposits just below the CTR reporting requirement of $10,001, and not depositing more than $10,000 in any one banking day, the bank did not have a duty to file a CTR. Taking such steps demonstrates knowledge of the $10,001 reporting requirement threshold and a concerted effort to keep cash deposits just below that amount.

24. As stated in paragraph 22, on 74 separate occasions, multiple cash deposits were made either on consecutive days or within a three-day period in amounts under $10,001 when treated individually, but exceed the $10,001 threshold amount when aggregated. Based on my training and experience, I know that when an individual conducts multiple cash deposits within such a short period of time (e.g. consecutive days and/or within a three-day period), this activity suggests that the cash was acquired in amounts exceeding $10,000 and broken up into separate deposits each less than $10,001.

25. On 22 separate occasions, multiple cash deposits were made on the same day that when aggregated exceeds the $10,000 CTR reporting requirement threshold. On 20 of those occasions, the two deposits were made at two different branches of the same bank, even though the deposits were often made into the same account. For instance, on Monday, November 22, 2010 at 2:51p.m., an $8,300 cash deposit was made into SHUKLA LLC's BOA account (number 446007781135) at the Randallstown branch located on Liberty Road in Randallstown, Maryland. Approximately two hours later, at 4:48p.m., another cash deposit in the amount of $9,900 was made into the same account at the Eastpoint branch on Eastpoint Mall Road in Baltimore, Maryland. BOA filed a CTR on this date because the total amount of cash deposited that day exceeded $10,000. The intentional use of two different branches of the same bank on the same day indicates knowledge of the bank's reporting obligation and a conscious attempt to circumvent it. As mentioned in paragraph 10, this activity is an example "imperfect structuring" because the bank's obligation to file a CTR is triggered notwithstanding the customer's intent to evade it.

26. Furthermore, on two other occasions, multiple cash deposits were made on the same day at two different banks. For instance, on Monday, March 28, 2011 at 1:56p.m., a $1,000 cash deposit was made into A. MULTANI's BOA account (number 446007811458) at the Eastpoint branch. Just seven minutes later, at 2:03p.m., another cash deposit in the amount of $9,900 was made into SHUKLA LLC's PNC account (number 5563009167) at an unknown branch. As described in paragraph 10, this activity is an example of "perfect structuring" because multiple deposits were made into different banks on the same day, with no one deposit exceeding $10,000 but with the total being in excess of that amount, and no one bank had a duty to file a CTR.

27. In all, the signors of SHUKLA LLC's business accounts made 294 individual cash deposits totaling close to $2 million in a two-year period. None of currency deposits were equal to or exceeded the $10,001 CTR reporting requirement threshold. *See United States v. MacPherson*, 424 F.3d 183, 195 (2d Cir. 2005) (the jury may infer defendant's knowledge of the reporting requirement and his intent to evade it from the pattern of his transactions). In this case, your affiant believes that depositing nearly $2 million in 294 sub-$10,001 transactions, with multiple deposits sometimes occurring on the same day, represents powerful circumstantial evidence.

28. Although your affiant has not scheduled bank records prior to January of 2010, it appears that the structuring of cash deposits into SHUKLA LLC's BOA account (number 446007781135) dates as far back as April of 2008.  On April 28, 2008, BOA filed a CTR indicating that $12,105 in cash was deposited that day into SHUKLA LLC's account via multiple transactions.  Similarly, on July 7, 2008, BOA filed a CTR indicating that $14,960 in cash was deposited into the same account, again via multiple transactions.  According to BOA records, from January 5, 2009 through December 29, 2009, 191 individual currency deposits totaling $957,958 were made into SHUKLA's and H. MULTANI's business and personal accounts.  Of those 191 deposits, none were greater than $10,000 and $9,900 was deposited 37 times.

## FACTS SUPPORTING PROBABLE CAUSE THAT EVIDENCE OF STRUCTURING AND RELATED OFFENSES WILL BE FOUND AT 1108-1110 NORTH POINT ROAD, BALTIMORE, MD 21222

29. The PNC and BOA business accounts, into which structured cash deposits were made, are both held in the name of SHUKLA LLC and the address appearing on the monthly statements for both accounts is 1108 North Point Road, Baltimore, MD 21222[3].

30. On May 20, 2008, SHUKLA submitted a trade name application for the name NORTH POINT LIQUOR & BAR.  The address where the trade name is to be used is listed as 1108-1110 North Point Road, Baltimore, Maryland 21222.  The description of the business is listed as "Liquors, Beer, & Wine."

31. On January 10, 2012, SHUKLA submitted a Trade Name Amendment Application for the trade name NORTH POINT LIQUOR & BAR.  The owner's name is listed as SHUKLA, LLC and the owner's address is listed as 1108-1110 North Point Road, Baltimore, Maryland 21222.  The address where the trade name is to be used is also listed as 1108-1110 North Point Road, Baltimore, Maryland 21222.  SUSHEEL SHUKLA signed the Amendment Application as owner.

32. On January 26, 2012, your affiant conducted surveillance at 1108-1110 North Point Road, Baltimore, MD 21222 and entered the location.  Both SHUKLA and H. MULTANI were observed standing behind the counter.  SHUKLA was writing on a notepad behind a Keno machine while H. MULTANI was processing customers' purchases using an electronic cash register.  Your affiant also saw a hallway immediately to the right upon entering the store with two doorways down the hall on the right-hand side.

---

[3] Monthly statements from as recently as November 2011 list SHUKLA LLC's address as 1108 North Point Road, Baltimore, MD 21222.

33. On February 10, 2012, your affiant conducted surveillance at 1108-1110 North Point Road, Baltimore, MD 21222 and entered the location. SHUKLA was observed standing behind the counter. There was paperwork lying on a shelf behind the counter.

## NORMAL COURSE OF BUSINESS

34. Based on my knowledge and experience, and based on discussions with experienced white-collar criminal investigators, I know that it is common for individuals who are operating a business (whether lawful businesses, wholly illicit businesses, or lawful businesses which commit unlawful activities related thereto) to maintain records related to their business such as:

   Records reflecting the amount of gross receipts received, including cash register receipt tapes, receipt books, daily sales sheets and reconciliations, books, records, ledgers, journals, statements, etc...

   Records of any cash payments/disbursements, including books, records, ledgers, journals, statements, invoices, billings, receipts, financial statements, balance sheets, etc...

   Bank and other financial records, including statements, bank receipts, deposit slips, copies of deposited items, withdrawal slips, cancelled checks, bank checks, money order receipts, wire transfers, credit and debit memos, etc...

35. I also know that persons engaged in financial fraud frequently retain records of their transactions within their place of business or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, and other records. Persons engaged in financial crimes such as "structuring" often maintain such records for an extended period of time, particularly when they are involved in ongoing criminal conduct. There are many reasons why criminal offenders maintain evidence for long periods of time. First, to the offender, the evidence may seem innocuous at first glance (e.g. financial, credit card, and banking documents, travel documents, receipts, client lists, documents reflecting purchases of assets, person calendars, telephone and address directories, check books, videotapes and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone bills, keys to safe deposit boxes, packaging materials, computer hardware and software). To law enforcement, however, such items may have significance and relevance when considered in light of other evidence. Second, the criminal offender may no longer realize he/she still possesses the evidence or may believe law enforcement could not obtain a search warrant to seize evidence. Third, the criminal offender may also be under the mistaken belief that he/she has deleted, hidden, or further destroyed computer-related evidence, which in fact, may be retrievable by a trained forensic computer expert.

36. Furthermore, individuals engaged in an income-producing business typically keep records of the financial activities of the business in order to provide such information to their accountant/return preparer in order to complete financial statements and tax returns.

## EVIDENCE OF OTHER REVENUE-RELATED CRIMES

37. Based on my knowledge and experience, I know that in cases involving cash-intensive small businesses, structuring activity of the kind outlined above frequently occurs in conjunction with other revenue-related offenses, including tax evasion. In fact, of the 10 structuring investigations undertaken by the Maryland Financial Crimes Task Force since its inception in October 2010 that resulted in criminal charges, 5 included charges of criminal tax evasion.

38. In fact, I am advised that as a matter of federal law, evidence tending to establish that a structuring offense was committed as part of, or in conjunction with, the violation of another federal law such as tax evasion, is highly relevant to the prosecution of a structuring violation because it bears on the punishment that may be imposed under the applicable statute, the advisory sentencing guidelines, and the asset forfeiture laws. *See* 31 U.S.C. § 5324(d) (providing that the penalty is doubled if the defendant committed the structuring offense "while violating another law of the United States"); U.S.S.G. § 2S1.3 (providing for an enhancement in the offense level under the advisory sentencing guidelines if the structuring offense was linked to another criminal act); *United States v. Ahmad*, 213 F.3d 805, 817, 819 (4th Cir. 2000) (holding that the forfeiture of structured funds does not violate the Excessive Fines Clause of the Eighth Amendment if the structuring offense was part of a conspiracy to commit another offense).

39. Finally, evidence of tax evasion and other revenue-related offenses supports the inference that the structuring activity was intentional and not the result of mistake, coincidence, ignorance of the regulatory requirements or other benign explanation.

40. For all of these reasons, it is common to find evidence of tax evasion and other revenue-related crimes when conducting a search for evidence of structuring, and such evidence it relevant to proving the existence of the structuring offense itself.

## COMPUTER EVIDENCE

41. As described in Attachment "B", this application seeks permission to search and seize records that might be found on the premises, in whatever form they are found. Based on consultations with IRS-CI Special Agent Brian Schaub, who is a computer investigative specialist and who has extensive training in collecting and analyzing computer evidence, I know that if a computer or electronic medium is

found on the premises, there is probable cause to believe those records will be stored in that computer or electronic medium. Based on consultations with Special Agent Schaub, I further know that:

42. Computer storage devices such as hard disks can store the equivalent of millions of pages of information. Criminals can mislabel or hide files and directories, encode communications to avoid using key words, attempt to delete files to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or peruse every file briefly to determine whether it falls within the scope of the warrant.

43. The most forensically sound, effective, and complete way to analyze data from the computer is to create an electronic "image" of the computer media. As "imaging" is not always possible or practical, a computer specialist will decide whether to employ this or another method.

44. "Imaging" is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files designed to protect the integrity of the evidence. "Imaging" a computer permits the computer specialist to obtain an exact copy of the computer's stored data. The computer specialist will then analyze data from the "mirror image" copy. "Imaging" is preferable to searching and extracting files from a hard drive because in many cases, search techniques may not yield the evidence described in the warrant. Additionally, computer evidence is vulnerable to inadvertent or intentional modification or destruction (both from external sources and from destructive code imbedded in the system as a "booby trap"). Therefore, a controlled environment is preferential to conduct an accurate and safe analysis. In light of these difficulties, IRS-CI intends to conduct its searches offsite and use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

45. The computer specialist will try to image computers on site if possible. If the computer investigative specialist successfully images the computers, there will be no need to seize the actual equipment. If imaging proves impractical, or even impossible for technical reasons, I hereby request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to "image" or analyze the device(s) off-site. Upon completion, the government will return the equipment within a reasonable time.

46. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using readily available forensics tools. This is so because

when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

47. Deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the hard drive that is not currently being used by an active file - for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

48. Files that have been viewed via the Internet are typically automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

49. Some types of data are hardware dependant and need a piece of hardware, such as an encryption key for a software program to run or data to be accessed. In these cases, it is necessary to seize the required hardware or encryption key to access this data.

50. Many devises are capable of storing electronic data containing evidence described in this warrant. These devices include:

Computers; computer components; computer peripherals; modems; monitors; printers; plotters; copiers; fax machines; optical scanners; external hard drives; floppy disks; diskettes; fixed hard disks; removable hard disk cartridges; flash "thumb" drives and similar devices; tapes; video cassettes; digital cameras and digital camera storage cards; cellular telephones; PDAs; other smart phones and their storage cards; passwords, encryption keys, and other access devices that may be necessary to access the above devices or media; and any other media which is capable of storing magnetic coding and other computer related electronic devices.

51. Because of the vast number of different devices on the market, and the complexity of analyzing some of the devices, I hereby request the Court's permission to seize these or similar devices and to "image" or analyze the device(s) off-site. Upon completion, the government will return the equipment within a reasonable time.

## APPLICABLE FORFEITURE PRINCIPLES

52. Based on my training and experience, I know that 31 U.S.C. § 5317(c) provides for the civil and criminal forfeiture of "any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy." I also

know that the civil forfeiture of such property is governed by the procedures in 18 U.S.C. § 981, and that criminal forfeiture is governed by the procedures in 21 U.S.C. § 853.

53. Based on my training and experience, I know that in order to obtain a seizure warrant in a forfeiture case, the government has the initial burden of showing probable cause to believe that a substantial connection exists between the property and the criminal activity (in this case, violations of the currency transaction reporting requirements of 31 U.S.C. § 5324(a)(1) and (3)). *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. 248, 251 (E.D. Va. 1993). *See* 18 U.S.C. § 981(b); 21 U.S.C. 853(f). I am further advised that "probable cause" means simply a reasonable ground for belief that goes beyond mere suspicion but need not amount to prima facie proof. *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. at 251-52. This standard requires courts to make a practical, common sense decision whether, given all the circumstances, a fair probability exists that the property to be forfeited was involved in or was the subject of a transaction violating 5324. Id. *See also United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990).

54. Based on my training and experience, I also know that pursuant to 31 U.S.C. § 5317(c), civil and criminal forfeiture is triggered by the structuring of cash deposits in violation of 31 U.S.C. § 5324(a)(1) and (3). To prove a violation of that statute, the Government is required to prove only that a currency transaction or series of currency transactions exceeding $10,000 was structured within the meaning of 31 C.F.R. 103.11(gg), and that the person conducting the transaction intended to evade the currency reporting requirement. It is not necessary to show that the person knew that structuring was illegal. *United States v. Ismail*, 97 F.3d 50, 56 (4th Cir. 1996). Accordingly, this affidavit need only show probable cause to believe that the currency deposits into SHUKLA's and H. MULTANI's business and personal accounts were divided into amounts less than $10,001 and deposited with the intent to avoid the filing of CTRs.

55. Based on the information set forth in this affidavit, there is probable cause to believe that all of the deposits listed on Attachment C were part of a pattern of financial transactions conducted with the intent to evade the currency reporting requirements, and that accordingly, all of the funds involved in those offenses are subject to forfeiture pursuant to Section 5317(c). At this time, however, your affiant is seeking authority to seize only the funds that were deposited on the same day, on consecutive days, or within a 3-day period, and only those funds that were so deposited on or after April 1, 2011.

56. Accordingly, your affiant submits that based on this evidence set forth in Attachment C, there is probable cause to seize the following amounts from the following bank accounts:

$569,950 in structured cash deposits were made into PNC account number 5563009167, in the name of SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR, from April 1, 2011 to November 18, 2011;

$28,700 in structured cash deposits were made into PNC account number 5560928969, in the name of SUSHEEL SHUKLA and SONIA SAINI, from April 1, 2011 to November 18, 2011;

$2,770 in structured cash deposits were made into BOA account number 446007781135, in the name of SHUKLA LLC, from April 1, 2011 to November 18, 2011;

$6,278.30 in structured cash deposits were made into BOA account number 446007811458, in the name of AMANDEEP MULTANI, from April 1, 2011 to November 18, 2011.

57. Property subject to civil forfeiture may be seized pursuant to 18 U.S.C. § 981(b), and property subject to criminal forfeiture may be seized pursuant to 21 U.S.C. § 853(f). In cases where the Government is not certain at the time of the seizure if it will pursue civil or criminal forfeiture, courts may issue the seizure warrant under both statutes. *See United States v. Lewis*, 2006 WL 1579855, *4 (D. Minn. 2006). The probable cause showing is the same for Sections 981(b) and 853(f), except that the latter also requires a showing that a restraining order "may not be sufficient to assure the availability of the property for forfeiture." Based on my training and experience, I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is served. Moreover, I have contacted the bank and know that the current balance in the subject bank account is well below the amount reflected in the structured deposits, indicating that a large portion of the forfeitable property has already been taken from the account. *See United States v. Dupree*, 2011 WL 1004824, *12 (E.D.N.Y. Mar. 18, 2011) (the Government may satisfy § 853(f) by showing that some of the criminal proceeds deposited into a bank account have already been depleted because that illustrates that the funds not only could be moved, but that some of them already *have been* moved)."

## CONCLUSION

58. Wherefore, it is hereby requested that Special Agents and/or Task Force Officers of the Internal Revenue Service be authorized to seize, pursuant to 18 U.S.C. §

12-1284SAG  to  12-1288SA

981(b) and 21 U.S.C. § 853(f), $569,950 in PNC account number 5563009167, $28,700 in PNC account number 5560928969, $2,770 in BOA account number 446007781135, and $6,278.30 in BOA account number 446007811458.

59. Additionally, for the reasons set forth above, I respectfully request that the Court issue a search warrant for 1108-1110 North Point Road Baltimore, Maryland 21222.  The purpose of the search warrant is to search for and seize evidence, fruits, and instrumentalities of the crimes detailed in this affidavit, and as listed in Attachment B.


John Matzerath
Task Force Officer, IRS-CID


SUBSCRIBED AND SWORN TO BEFORE ME THIS __13th__ day of March, 2012.

United States Magistrate Judge

12-1284SAG to 12-1288S

# ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

### 1108-1110 NORTH POINT ROAD, BALTIMORE, MARYLAND 21222

The Premises is known as **1108-1110 North Point Road, Baltimore, Maryland 21222.** 1108-1110 North Point Road is an attached building. The numbers "1108" are written in black and located on wood, brown molding on the southwest corner of the building facing North Point Road (facing south). There is a windowless, gray door located on the southwest corner of the building facing Carroll Avenue (facing west) that accesses that portion of the NORTH POINT LIQUOR & BAR establishment. This section of the building is constructed of wood and beige siding. A "NORTH POINT LIQUOR & BAR" sign is located on the roof of this section of the building.

Attached to the right of 1108 North Point is a red-brick constructed building. A "NORTH POINT LIQUOR & BAR" sign made of individual red letters is located above the entrance into this section of the building. The entrance to this section of the building faces south toward North Point Road. No numbers indicating the address are found on or near the door. The entrance is a glass and aluminum double door entrance way. A neon "Open" sign and an ATM sign are located to the right of the entrance, as are several alcohol-related advertisement signs.

12-1284SAG ✪0 12-1288S

## ATTACHMENT B
### Items to be seized at:

### 1108-1110 NORTH POINT ROAD, BALTIMORE, MARYLAND 21222

~~United States currency~~, Business records of **SHUKLA LLC** doing business as **NORTH POINT LIQUOR & BAR**, and personal records of **SUSHEEL SHUKLA, SONIA SAINI, HARJEET SINGH MULTANI**, and **AMANDEEP K. MULTANI**, whether stored in hard copy or electronic format, relating to the period **JANUARY 1, 2008 TO PRESENT**, which are fruits, instrumentalities, and evidence of violations of Title 31 U.S.C. § 5324 (a)(3), Structuring Currency Transactions to Evade a Filing Requirement, and Title 31 U.S.C. § 5324 (a)(1), Causing or Attempting to Cause a Financial Institution to Fail to File a Currency Transaction Report, ~~including but not limited to~~:

1. U.S. currency in amounts greater than $10,000;

2. The following financial records are to be seized **if the records include cash received or transferred and/or cash cannot be discerned from other records maintained in the course of normal business activities:**

   a. Books, records, ledgers, journals, statements, cash register receipts and/or tapes, invoices, billings, financial statements, balance sheets, notes and work papers;

   b. All correspondence, letters, memorandum, applications, powers of attorney, and listings, which contain financial information, such as income, expenses, assets, liabilities, transfer of money;

   c. Bank and other financial institution records, including bank statements, passbooks, deposit slips, withdrawal slips, cancelled checks, bank receipts, bank checks, money order receipts, wire transfers, credit and debit memos, and safe deposit keys and records;

   d. Bank and other financial institution records, showing acquisition, conversion, movement, secreting, transfer and disbursement of United States and foreign currency;

   e. Records of loans or letters of credit including contracts, mortgages, notes, agreements, applications, payments, and financial statements;

   f. Credit and debit card records, including records of purchases, withdrawals, deposits and cash advances made with credit and debit cards, and including statements and receipts;

   g. Records of expenditures including payments, receipts, invoices, statements;

h. Records of income to include; cash receipts, receipt books, cash register receipt tapes, copies of checks and deposit slips, daily sales sheets and reconciliation;

i. Records of any asset acquired in part or in whole via cash;

1. Employment records and personnel files including payroll journals, payroll records and correspondence that indicate cash payments to employees;

2. Any Currency Transaction Reports or Information related to the legal requirement to file Currency Transaction Reports, regardless of their date of creation;

3. Information concerning suppliers for SHUKLA LLC doing business as NORTH POINT LIQUOR & BAR and any invoices, receipts, or payments that indicated cash or where the payment method cannot be discerned;

4. Records for any financial transaction that in part or in whole include the receipt or payment of cash;

5. Any book, records, receipts, notes, ledgers, or other documents related to the acquisition, purchase, transportation, secreting and/or movement of United States and foreign currency, both domestically and internationally;

6. Electronic devices which are capable of storing, analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data that is contained in this warrant. These devices include:

   o Computers, computer components, computer peripherals, modems, monitors, printers, plotters, copiers, fax machines, optical scanners, external hard drives, and other computer related electronic devices;

   o Instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, and other programs of software used to communicate with computer hardware or peripherals;

   o Information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes floppy disks, diskettes, fixed hard disks, removable hard disk cartridges, flash "thumb" drives and similar devices, tapes, video cassettes, and any other media which is capable of storing magnetic coding;

   o Digital cameras and digital camera storage cards;

- ~~Cellular telephones, PDAs, and other smart phones and their storage~~ ~~cards;~~

- Passwords, encryption keys, and other access devices that may be necessary to access the above devices or media; and/or

- Written or printed material which provides instructions or examples concerning the operation of any of the above devices, media, or software.

**ATTACHMENT C**
**SCHEDULE OF CASH DEPOSITS**
**JANUARY 1, 2010 THROUGH NOVEMBER 18, 2011**
PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR); 5569028969 (SONIA SAINI & SUSHEEL SHUKLA)
BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007781135 (SHUKLA LLC); 003921527135 (SUSHEEL SHUKLA & SONIA SAINI);
BOA ACCOUNT NO.'S 003921606137 (HARJEET & AMANDEEP MULTANI); 446007811458 (AMANDEEP MULTANI)

| DEPOSIT DATE | BANK | ACCOUNT NO. | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|
| ...nday, January 04, 2010 | BOA | 446007781135 | | | $ 1,000.00 | | |
| ...iday, January 08, 2010 | BOA | 446007781135 | | | 1,300.00 | | |
| ...nday, January 11, 2010 | BOA | 003921606137 | 9:06am | Randallstown | 9,900.00 | $ 9,900.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| ...nday, January 11, 2010 | BOA | 446007811458 | 9:07am | Randallstown | 2,000.00 | 2,000.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| ...nday, January 11, 2010 | BOA | 446007781135 | 9:23am | Garrison Forest | 2,200.00 | 2,200.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| ...iday, January 15, 2010 | BOA | 446007781135 | | | 3,000.00 | | |
| ...esday, January 19, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| ...iday, January 22, 2010 | BOA | 446007781135 | | | 2,500.00 | | |
| ...nday, January 25, 2010 | BOA | 446007781135 | 2:04pm | Garrison Forest | 3,000.00 | 3,000.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| ...nday, January 25, 2010 | BOA | 446007781135 | 3:43pm | Sparrows Point | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| ...iday, January 29, 2010 | BOA | 446007781135 | | | 4,350.00 | | |
| ...nday, February 01, 2010 | BOA | 446007781135 | | | 4,000.00 | | |
| ...rsday, February 04, 2010 | BOA | 446007781135 | | | 6,520.00 | | |
| ...nday, February 08, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| ...iday, February 12, 2010 | BOA | 446007781135 | | | 8,000.00 | 8,000.00 | |
| ...esday, February 16, 2010 | BOA | 446007811458 | 3:10pm | Garrison Forest | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| ...esday, February 16, 2010 | BOA | 446007781135 | 3:26pm | Garrison Forest | 3,900.00 | 3,900.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| ...iday, February 19, 2010 | BOA | 446007781135 | | | 900.00 | | |
| ...nday, February 22, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| ...esday, February 23, 2010 | BOA | 446007781135 | | | 5,000.00 | 5,000.00 | CONSECUTIVE DAYS |
| ...iday, February 26, 2010 | BOA | 446007781135 | | | 3,000.00 | | |
| ...londay, March 01, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| ...dnesday, March 10, 2010 | BOA | 003921606137 | | | 9,900.00 | 9,900.00 | 3-DAY PERIOD |
| ...Friday, March 12, 2010 | BOA | 446007781135 | | | 2,800.00 | 2,800.00 | 3-DAY PERIOD |
| ...londay, March 15, 2010 | BOA | 446007781135 | | | 9,500.00 | 9,500.00 | |
| ...Friday, March 19, 2010 | BOA | 446007781135 | | | 5,000.00 | | |
| ...londay, March 22, 2010 | BOA | 446007781135 | | | 9,950.00 | 9,950.00 | |
| ...ursday, March 25, 2010 | BOA | 446007781135 | | | 4,680.00 | | |
| ...Friday, March 26, 2010 | BOA | 446007781135 | | | 2,000.00 | | |
| ...londay, March 29, 2010 | BOA | 446007781135 | | | 9,400.00 | 9,400.00 | |
| Friday, April 02, 2010 | BOA | 446007781135 | | | 5,050.00 | | |
| Monday, April 05, 2010 | BOA | 446007781135 | | | 9,750.00 | 9,750.00 | CONSECUTIVE DAYS |
| Tuesday, April 06, 2010 | BOA | 446007781135 | | | 6,023.00 | 6,023.00 | CONSECUTIVE DAYS |
| Friday, April 09, 2010 | BOA | 446007781135 | | | 5,000.00 | | |
| Monday, April 12, 2010 | BOA | 446007781135 | | | 9,970.00 | 9,970.00 | CONSECUTIVE DAYS |
| Tuesday, April 13, 2010 | BOA | 446007781135 | | | 7,600.00 | 7,600.00 | CONSECUTIVE DAYS |
| Monday, April 19, 2010 | BOA | 446007781135 | | | 5,000.00 | | |
| ...ednesday, April 21, 2010 | BOA | 446007781135 | | | 4,000.00 | 4,000.00 | 3-DAY PERIOD |
| Friday, April 23, 2010 | BOA | 446007781135 | | | 7,000.00 | 7,000.00 | 3-DAY PERIOD |
| Monday, April 26, 2010 | BOA | 446007781135 | | | 9,804.00 | 9,804.00 | |
| Monday, May 03, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| Friday, May 07, 2010 | BOA | 446007781135 | | | 1,500.00 | | |
| Tuesday, May 11, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| Friday, May 14, 2010 | BOA | 446007781135 | | | 5,000.00 | | |
| Tuesday, May 18, 2010 | BOA | 446007781135 | | | 6,520.00 | 6,520.00 | 3-DAY PERIOD |
| Thursday, May 20, 2010 | BOA | 446007781135 | | | 4,710.00 | 4,710.00 | 3-DAY PERIOD |
| Friday, May 21, 2010 | BOA | 446007781135 | | | 1,700.00 | 1,700.00 | |
| Monday, May 24, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Tuesday, May 25, 2010 | BOA | 446007781135 | | | 7,900.00 | 7,900.00 | CONSECUTIVE DAYS |
| Friday, May 28, 2010 | BOA | 446007781135 | | | 1,200.00 | | |

**ATTACHMENT C**
**SCHEDULE OF CASH DEPOSITS**
**JANUARY 1, 2010 THROUGH NOVEMBER 16, 2011**
PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR), 5560928959 (SONIA SAINI & SUSHEEL SHUKLA)
BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007781135 (SHUKLA LLC), 003921527135 (SUSHEEL SHUKLA & SONIA SAINI),
BOA ACCOUNT NO.'S 003921606137 (HARJEET & AMANDEEP MULTANI), 446007811458 (AMANDEEP MULTANI)

| DEPOSIT DATE | BANK | ACCOUNT NO. | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT[1] | NOTES |
|---|---|---|---|---|---|---|---|
| Tuesday, June 01, 2010 | BOA | 446007781135 | 9:29am | Garrison Forest | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Tuesday, June 01, 2010 | BOA | 446007781135 | 4:28pm | Garrison Forest | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Thursday, June 03, 2010 | BOA | 446007781135 | | | 5,000.00 | 5,000.00 | 3-DAY PERIOD |
| Friday, June 04, 2010 | BOA | 446007781135 | | | 2,600.00 | | |
| Monday, June 07, 2010 | BOA | 446007781135 | | | 9,900.00 | | |
| Tuesday, June 08, 2010 | BOA | 446007781135 | | | 5,500.00 | 5,500.00 | CONSECUTIVE DAYS |
| Monday, June 14, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| Thursday, June 17, 2010 | BOA | 446007781135 | | | 8,000.00 | 8,000.00 | CONSECUTIVE DAYS |
| Friday, June 18, 2010 | BOA | 446007781135 | | | 2,200.00 | 2,200.00 | CONSECUTIVE DAYS |
| Monday, June 21, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | 3-DAY PERIOD |
| Wednesday, June 23, 2010 | BOA | 446007781135 | | | 5,005.00 | 5,005.00 | 3-DAY PERIOD |
| Friday, June 25, 2010 | BOA | 446007781135 | | | 3,000.00 | | |
| Monday, June 28, 2010 | BOA | 446007781135 | | | 8,000.00 | 8,000.00 | |
| Tuesday, July 06, 2010 | BOA | 446007781135 | 3:06pm | Towson Courthouse | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Tuesday, July 06, 2010 | BOA | 446007781135 | 4:52pm | Merritt Boulevard | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Wednesday, July 07, 2010 | BOA | 446007781135 | | | 6,800.00 | 6,800.00 | CONSECUTIVE DAYS |
| Friday, July 09, 2010 | BOA | 446007781135 | | | 2,000.00 | | |
| Monday, July 12, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| Tuesday, July 13, 2010 | BOA | 446007781135 | | | 4,985.00 | 4,985.00 | CONSECUTIVE DAYS |
| Thursday, July 15, 2010 | BOA | 446007781135 | | | 4,677.00 | | |
| Friday, July 16, 2010 | BOA | 446007781135 | | | 1,703.00 | | |
| Monday, July 19, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Tuesday, July 20, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Monday, July 26, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| Thursday, July 29, 2010 | BOA | 446007781135 | | | 6,000.00 | 6,000.00 | CONSECUTIVE DAYS |
| Friday, July 30, 2010 | BOA | 446007781135 | | | 8,000.00 | 8,000.00 | CONSECUTIVE DAYS |
| Monday, August 02, 2010 | BOA | 446007781135 | | | 8,427.00 | 8,427.00 | CONSECUTIVE DAYS |
| Tuesday, August 03, 2010 | BOA | 446007781135 | | | 4,535.00 | 4,535.00 | CONSECUTIVE DAYS |
| Friday, August 06, 2010 | BOA | 446007781135 | | | 4,257.00 | | |
| Monday, August 09, 2010 | BOA | 446007781135 | | | 9,396.00 | 9,396.00 | CONSECUTIVE DAYS |
| Tuesday, August 10, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Friday, August 13, 2010 | BOA | 446007781135 | | | 3,258.00 | | |
| Monday, August 16, 2010 | BOA | 446007781135 | | | 9,980.00 | 9,980.00 | CONSECUTIVE DAYS |
| Tuesday, August 17, 2010 | BOA | 446007781135 | | | 4,050.00 | 4,050.00 | CONSECUTIVE DAYS |
| Thursday, August 19, 2010 | BOA | 446007781135 | | | 3,494.00 | | |
| Friday, August 20, 2010 | BOA | 446007781135 | | | 2,775.00 | | |
| Monday, August 23, 2010 | BOA | 446007781135 | | | 9,430.00 | 9,430.00 | CONSECUTIVE DAYS |
| Tuesday, August 24, 2010 | BOA | 446007781135 | | | 8,316.00 | 8,316.00 | CONSECUTIVE DAYS |
| Friday, August 27, 2010 | BOA | 446007781135 | | | 2,170.00 | | |
| Monday, August 30, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Tuesday, August 31, 2010 | BOA | 446007781135 | | | 2,630.00 | 2,630.00 | CONSECUTIVE DAYS |
| Friday, September 03, 2010 | BOA | 446007781135 | | | 6,033.00 | | |
| Tuesday, September 07, 2010 | BOA | 446007781135 | Unknown | Merritt Boulevard | 9,225.00 | 9,225.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Tuesday, September 07, 2010 | BOA | 446007781135 | 4:14pm | Ten Light | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Wednesday, September 08, 2010 | BOA | 446007781135 | | | 5,228.00 | 5,228.00 | CONSECUTIVE DAYS |
| Friday, September 10, 2010 | BOA | 446007781135 | | | 4,295.00 | | |
| Monday, September 13, 2010 | BOA | 446007781135 | | | 9,809.00 | 9,809.00 | |
| Friday, September 17, 2010 | BOA | 446007781135 | | | 1,000.00 | | |
| Monday, September 20, 2010 | BOA | 446007781135 | | | 9,000.00 | 9,000.00 | |
| Thursday, September 23, 2010 | BOA | 446007781135 | | | 5,357.00 | | |

ATTACHMENT C
SCHEDULE OF CASH DEPOSITS
JANUARY 1, 2010 THROUGH NOVEMBER 18, 2011
PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR), 5560928969 (SONIA SAINI & SUSHEEL SHUKLA)
BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007781135 (SHUKLA LLC), 003921527135 (SUSHEEL SHUKLA & SONIA SAINI),
BOA ACCOUNT NO.'S 003921606137 (HARJEET & AMANDEEP MULTANI), 446007811458 (AMANDEEP MULTANI)

| DEPOSIT DATE | BANK | ACCOUNT NO. | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT[1] | NOTES |
|---|---|---|---|---|---|---|---|
| day, September 24, 2010 | BOA | 446007781135 | | | 853.00 | | |
| iday, September 27, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| sday, September 28, 2010 | BOA | 446007781135 | | | 3,552.00 | 3,552.00 | CONSECUTIVE DAYS |
| sday, September 30, 2010 | BOA | 446007781135 | | | 8,121.00 | 8,121.00 | 3-DAY PERIOD / CONSECUTIVE DAYS |
| riday, October 01, 2010 | BOA | 446007781135 | | | 2,061.00 | 2,061.00 | CONSECUTIVE DAYS |
| onday, October 04, 2010 | BOA | 446007781135 | | | 9,911.00 | 9,911.00 | |
| riday, October 08, 2010 | BOA | 446007781135 | | | 1,620.00 | | |
| esday, October 12, 2010 | BOA | 446007781135 | 3:38pm | Middlesex | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| iesday, October 12, 2010 | BOA | 446007781135 | 4:45pm | Middlesex | 6,100.00 | 6,100.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| riday, October 15, 2010 | BOA | 446007781135 | | | 8,100.00 | 8,100.00 | |
| onday, October 18, 2010 | BOA | 446007781135 | 1:09pm | Towson | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| onday, October 18, 2010 | BOA | 446007781135 | 4:51pm | Eastpoint | 5,112.00 | 5,112.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| riday, October 22, 2010 | BOA | 446007781135 | | | 7,810.00 | | |
| onday, October 25, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| iesday, October 26, 2010 | BOA | 446007781135 | | | 5,201.00 | 5,201.00 | CONSECUTIVE DAYS |
| riday, October 29, 2010 | BOA | 446007781135 | | | 3,696.00 | | |
| inday, November 01, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| esday, November 02, 2010 | BOA | 446007781135 | | | 9,000.00 | 9,000.00 | CONSECUTIVE DAYS |
| iday, November 05, 2010 | BOA | 446007781135 | | | 2,500.00 | | |
| inday, November 08, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| esday, November 09, 2010 | BOA | 446007781135 | | | 9,626.00 | 9,626.00 | CONSECUTIVE DAYS |
| iday, November 12, 2010 | BOA | 446007781135 | | | 8,322.00 | 8,322.00 | |
| inday, November 15, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| esday, November 16, 2010 | BOA | 446007781135 | | | 6,348.00 | 6,348.00 | CONSECUTIVE DAYS |
| irsday, November 18, 2010 | BOA | 446007781135 | | | 4,645.00 | | |
| iday, November 19, 2010 | BOA | 446007781135 | | | 2,600.00 | | |
| inday, November 22, 2010 | BOA | 446007781135 | 2:51pm | Randallstown | 8,300.00 | 8,300.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| inday, November 22, 2010 | BOA | 446007781135 | 4:48pm | Eastpoint | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| nesday, November 24, 2010 | BOA | 446007781135 | | | 4,900.00 | 4,900.00 | 3-DAY PERIOD |
| iday, November 26, 2010 | BOA | 446007781135 | | | 9,750.00 | 9,750.00 | 3-DAY PERIOD |
| inday, November 29, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| esday, November 30, 2010 | BOA | 446007781135 | | | 7,600.00 | 7,600.00 | CONSECUTIVE DAYS |
| iday, December 03, 2010 | BOA | 446007781135 | | | 1,800.00 | | |
| inday, December 06, 2010 | BOA | 446007781135 | | | 3,000.00 | | |
| irsday, December 09, 2010 | BOA | 446007781135 | | | 5,000.00 | | |
| iday, December 10, 2010 | BOA | 446007781135 | | | 3,000.00 | | |
| inday, December 13, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| esday, December 14, 2010 | BOA | 446007781135 | | | 7,000.00 | 7,000.00 | CONSECUTIVE DAYS |
| irsday, December 16, 2010 | BOA | 446007781135 | | | 1,000.00 | | |
| iday, December 17, 2010 | BOA | 446007781135 | | | 7,500.00 | | |
| inday, December 20, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | 3-DAY PERIOD |
| nesday, December 22, 2010 | BOA | 446007781135 | | | 9,920.00 | 9,920.00 | 3-DAY PERIOD |
| inday, December 27, 2010 | BOA | 446007781135 | 10:05am | Hanover Parkway | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| inday, December 27, 2010 | BOA | 446007781135 | 2:58pm | Reisterstown | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| esday, December 28, 2010 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| iday, December 31, 2010 | BOA | 446007781135 | | | 6,000.00 | | |
| | | | | 2010 TOTAL: | $ 953,910.00 | $ 795,267.00 | |
| londay, January 03, 2011 | BOA | 446007781135 | | | [illegible] | [illegible] | |

ATTACHMENT C
SCHEDULE OF CASH DEPOSITS
JANUARY 1, 2010 THROUGH NOVEMBER 18, 2011
PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR), 5560928969 (SONIA SAINI & SUSHEEL SHUKLA)
BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007781135 (SHUKLA LLC), 003921527135 (SUSHEEL SHUKLA & SONIA SAINI),
BOA ACCOUNT NO.'S 003921606137 (HARJEET & AMANDEEP MULTANI), 446007811458 (AMANDEEP MULTANI)

| DEPOSIT DATE | BANK | ACCOUNT NO. | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|
| day, January 07, 2011 | BOA | 446007781135 | | | 700.00 | | |
| day, January 10, 2011 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| sday, January 11, 2011 | BOA | 446007781135 | | | 8,000.00 | 8,000.00 | CONSECUTIVE DAYS |
| day, January 14, 2011 | BOA | 446007781135 | | | 2,000.00 | | |
| sday, January 18, 2011 | BOA | 446007781135 | 10:34am | Westview | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| sday, January 18, 2011 | BOA | 446007781135 | 3:59pm | Merritt Boulevard | 6,105.00 | 6,105.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| day, January 24, 2011 | BOA | 446007781135 | | | 4,000.00 | | |
| sday, January 25, 2011 | BOA | 003921527135 | | | 6,000.00 | | |
| day, January 27, 2011 | PNC | 5563009167 | | | 100.00 | | |
| day, January 28, 2011 | BOA | 446007781135 | | | 3,000.00 | | |
| day, January 31, 2011 | BOA | 446007781135 | Illegible | Eastpoint | 8,900.00 | 9,900.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| nday, January 31, 2011 | BOA | 446007811458 | Illegible | Eastpoint | 2,000.00 | 2,000.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| esday, February 02, 2011 | BOA | 446007781135 | | | 7,300.00 | 7,300.00 | 3-DAY PERIOD |
| day, February 04, 2011 | BOA | 446007781135 | | | 5,000.00 | 5,000.00 | 3-DAY PERIOD |
| day, February 07, 2011 | BOA | 446007781135 | | | 9,900.00 | 9,900.00 | |
| day, February 11, 2011 | BOA | 446007781135 | | | 2,000.00 | | |
| day, February 14, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| sday, February 15, 2011 | BOA | 446007781135 | | | 3,923.00 | 3,923.00 | CONSECUTIVE DAYS |
| day, February 18, 2011 | PNC | 5563009167 | | | 1,650.00 | | |
| sday, February 22, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | |
| day, February 25, 2011 | PNC | 5563009167 | | | 1,300.00 | | |
| day, February 28, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | CONSECUTIVE DAYS |
| esday, March 01, 2011 | PNC | 5563009167 | | | 8,500.00 | 8,500.00 | CONSECUTIVE DAYS |
| riday, March 04, 2011 | PNC | 5563009167 | | | 9,300.00 | 9,300.00 | |
| riday, March 11, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | |
| onday, March 14, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | |
| onday, March 14, 2011 | PNC | 5560928969 | 4:21pm | Towson | 8,495.00 | 8,495.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| riday, March 18, 2011 | PNC | 5563009167 | 4:29pm | Towson | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| onday, March 21, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| onday, March 21, 2011 | PNC | 5563009167 | 9:05am | Unknown | 3,500.00 | 3,500.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| onday, March 21, 2011 | PNC | 5563009167 | 4:31pm | Eastpoint | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| nesday, March 23, 2011 | PNC | 5563009167 | | | 5,500.00 | 5,500.00 | 3-DAY PERIOD |
| riday, March 25, 2011 | PNC | 5563009167 | | | 2,700.00 | 2,700.00 | 3-DAY PERIOD |
| riday, March 25, 2011 | PNC | 5560928969 | | | 4,000.00 | 4,000.00 | 3-DAY PERIOD |
| onday, March 28, 2011 | BOA | 446007811458 | 1:56pm | Eastpoint | 1,000.00 | 1,000.00 | SAME DAY / DIFFERENT BANKS |
| onday, April 04, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| uesday, April 05, 2011 | PNC | 5563009167 | | | 8,500.00 | 8,500.00 | CONSECUTIVE DAYS |
| hursday, April 07, 2011 | PNC | 5563009167 | | | 5,300.00 | 5,300.00 | 3-DAY PERIOD |
| Friday, April 08, 2011 | PNC | 5563009167 | | | 2,700.00 | | |
| onday, April 11, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| uesday, April 12, 2011 | PNC | 5563009167 | | | 4,500.00 | 4,500.00 | CONSECUTIVE DAYS |
| Friday, April 15, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| onday, April 18, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| uesday, April 19, 2011 | PNC | 5563009167 | | | 8,000.00 | 8,000.00 | CONSECUTIVE DAYS |
| dnesday, April 20, 2011 | PNC | 5563009167 | | | 3,500.00 | 3,500.00 | CONSECUTIVE DAYS |
| Friday, April 22, 2011 | PNC | 5563009167 | | | 2,000.00 | | |
| onday, April 25, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| uesday, April 26, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Friday, April 29, 2011 | PNC | 5563009167 | | | 6,000.00 | | |

**ATTACHMENT C**
**SCHEDULE OF CASH DEPOSITS**
**JANUARY 1, 2010 THROUGH NOVEMBER 18, 2011**
PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA LLC D/B/A NORTH POINT LIQUOR & BAR), 5560928969 (SONIA SAINI & SUSHEEL SHUKLA)
BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007781135 (SHUKLA LLC), 003921527135 (SUSHEEL SHUKLA & SONIA SAINI),
BOA ACCOUNT NO.'S 003921606137 (HARJEET & AMANDEEP MULTANI), 446007811458 (AMANDEEP MULTANI)

| DEPOSIT DATE | BANK | ACCOUNT NO. | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|
| Monday, May 02, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Tuesday, May 03, 2011 | PNC | 5563009167 | | | 6,000.00 | 6,000.00 | CONSECUTIVE DAYS |
| Friday, May 06, 2011 | PNC | 5563009167 | | | 8,000.00 | 8,000.00 | |
| Monday, May 09, 2011 | PNC | 5563009167 | 10:25am | Owings Mills | 9,900.00 | 9,900.00 | SAME DAY / DIFFERENT BANKS |
| Monday, May 09, 2011 | BOA | 446007811458 | 11:31am | Garrison Forest | 2,000.00 | 2,000.00 | SAME DAY / DIFFERENT BANKS |
| Wednesday, May 11, 2011 | PNC | 5563009167 | | | 6,000.00 | | |
| Friday, May 13, 2011 | PNC | 5563009167 | | | 3,200.00 | | |
| Monday, May 16, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Tuesday, May 17, 2011 | PNC | 5563009167 | | | 7,500.00 | 7,500.00 | CONSECUTIVE DAYS |
| Friday, May 20, 2011 | PNC | 5563009167 | | | 3,000.00 | | |
| Monday, May 23, 2011 | PNC | 5563009167 | | | 7,000.00 | | |
| Friday, May 27, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| Tuesday, May 31, 2011 | PNC | 5563009167 | 3:03pm | Owings Mills | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Tuesday, May 31, 2011 | PNC | 5563009167 | 4:34pm | Eastpoint | 9,700.00 | 9,700.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Wednesday, June 01, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS / 3-DAY PERIOD |
| Friday, June 03, 2011 | PNC | 5563009167 | | | 2,700.00 | 2,700.00 | 3-DAY PERIOD |
| Monday, June 06, 2011 | PNC | 5563009167 | | | 7,700.00 | | |
| Friday, June 10, 2011 | PNC | 5563009167 | | | 4,100.00 | | |
| Monday, June 13, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | 3-DAY PERIOD |
| Wednesday, June 15, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | 3-DAY PERIOD |
| Friday, June 17, 2011 | PNC | 5563009167 | | | 2,200.00 | 2,200.00 | 3-DAY PERIOD |
| Monday, June 20, 2011 | PNC | 5563009167 | 10:47am | Unknown | 4,000.00 | 4,000.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Monday, June 20, 2011 | PNC | 5563009167 | Unknown | Liberty Road | 9,000.00 | 9,000.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Wednesday, June 22, 2011 | PNC | 5563009167 | | | 3,300.00 | | |
| Friday, June 24, 2011 | PNC | 5563009167 | | | 4,900.00 | | |
| Monday, June 27, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | |
| Thursday, June 30, 2011 | PNC | 5563009167 | | | 1,000.00 | | |
| Friday, July 01, 2011 | PNC | 5563009167 | | | 3,600.00 | | |
| Tuesday, July 05, 2011 | PNC | 5563009167 | Illegible | Eastpoint | 9,950.00 | 9,950.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| Wednesday, July 06, 2011 | PNC | 5563009167 | | | 5,000.00 | 5,000.00 | CONSECUTIVE DAYS |
| Wednesday, July 06, 2011 | BOA | 446007781135 | | | 2,770.00 | 2,770.00 | CONSECUTIVE DAYS |
| Friday, July 08, 2011 | PNC | 5563009167 | | | | | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| Monday, July 11, 2011 | PNC | 5563009167 | 5:42pm | Eastpoint | 2,500.00 | 2,500.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| Wednesday, July 13, 2011 | PNC | 5563009167 | | | 6,000.00 | 6,000.00 | 3-DAY PERIOD |
| Friday, July 15, 2011 | PNC | 5563009167 | | | 7,000.00 | 7,000.00 | 3-DAY PERIOD |
| Tuesday, July 19, 2011 | PNC | 5563009167 | Illegible | Eastpoint | 1,600.00 | | |
| Tuesday, July 19, 2011 | PNC | 5563009167 | 11:16am | Unknown | 9,900.00 | 9,900.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| | | | | | 9,950.00 | 9,950.00 | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| Friday, July 22, 2011 | PNC | 5563009167 | | | 4,000.00 | | SAME DAY / SAME BANK / DIFFERENT ACCOUNTS |
| Monday, July 25, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Tuesday, July 26, 2011 | PNC | 5563009167 | | | 5,000.00 | 5,000.00 | CONSECUTIVE DAYS |
| Tuesday, July 26, 2011 | BOA | 446007811458 | | | 1,000.00 | 1,000.00 | CONSECUTIVE DAYS |
| Friday, July 29, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| Monday, August 01, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | CONSECUTIVE DAYS |
| Tuesday, August 02, 2011 | PNC | 5563009167 | | | 9,100.00 | 9,100.00 | CONSECUTIVE DAYS |
| Friday, August 05, 2011 | PNC | 5563009167 | | | 3,710.00 | | |
| Monday, August 08, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Tuesday, August 09, 2011 | PNC | 5563009167 | | | 8,000.00 | 8,000.00 | CONSECUTIVE DAYS |

**ATTACHMENT C**
**SCHEDULE OF CASH DEPOSITS**
**JANUARY 1, 2010 THROUGH NOVEMBER 18, 2011**

PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA LLC DBA NORTH POINT LIQUOR & BAR), 5560029690 (SONIA SAINI & SUSHEE SHUKLA)

BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007781135 (SHUKLA, LLC), 003821627135 (SUSHEEL SHUKLA & SONIA SAINI)

BOA ACCOUNT NO.'S 003521606137 (HARJEET & AMANDEEP MULTANI), 446007781488 (AMANDEEP MULTANI)

| DEPOSIT DATE | BANK | ACCOUNT NO. | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|
| Friday, August 12, 2011 | PNC | 5563009167 | | | 6,000.00 | | |
| Monday, August 15, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Tuesday, August 16, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Thursday, August 18, 2011 | BOA | 446007781135 | | | 1,700.00 | 1,700.00 | 3-DAY PERIOD |
| Friday, August 19, 2011 | PNC | 5563009167 | | | 2,000.00 | | |
| Monday, August 22, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | CONSECUTIVE DAYS |
| Tuesday, August 23, 2011 | PNC | 5563009167 | | | 6,000.00 | 6,000.00 | CONSECUTIVE DAYS |
| Friday, August 26, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| Monday, August 29, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Tuesday, August 30, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Tuesday, September 06, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Wednesday, September 07, 2011 | PNC | 5563009167 | | | 9,900.00 | 9,900.00 | CONSECUTIVE DAYS |
| Thursday, September 08, 2011 | BOA | 446007781135 | | | | | CONSECUTIVE DAYS |
| Friday, September 09, 2011 | PNC | 5563009167 | | | 2,500.00 | 2,500.00 | 3-DAY PERIOD |
| Monday, September 12, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | CONSECUTIVE DAYS |
| Tuesday, September 13, 2011 | PNC | 5563009167 | | | 8,500.00 | 8,500.00 | CONSECUTIVE DAYS / 3-DAY PERIOD |
| Friday, September 16, 2011 | PNC | 5563009167 | | | 7,000.00 | 7,000.00 | 3-DAY PERIOD / CONSECUTIVE DAYS |
| Monday, September 19, 2011 | PNC | 5563009167 | | | 6,000.00 | 6,000.00 | CONSECUTIVE DAYS |
| Monday, September 20, 2011 | BOA | 446007781135 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Tuesday, September 20, 2011 | BOA | 446007781135 | | | 1,578.30 | 1,578.30 | CONSECUTIVE DAYS |
| Friday, September 23, 2011 | PNC | 5563009167 | | | 7,500.00 | 7,500.00 | CONSECUTIVE DAYS |
| Monday, September 26, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| Tuesday, September 27, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | CONSECUTIVE DAYS |
| Friday, September 30, 2011 | PNC | 5563009167 | | | 9,500.00 | 9,500.00 | CONSECUTIVE DAYS |
| Monday, October 03, 2011 | PNC | 5563009167 | | | 6,000.00 | | |
| Tuesday, October 04, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Friday, October 07, 2011 | PNC | 5563009167 | | | 8,500.00 | 8,500.00 | CONSECUTIVE DAYS |
| Tuesday, October 11, 2011 | PNC | 5563009167 | | | 3,000.00 | | |
| Wednesday, October 12, 2011 | PNC | 5563009167 | | | 4,950.00 | 4,950.00 | CONSECUTIVE DAYS |
| Friday, October 14, 2011 | PNC | 5563009167 | | | 9,800.00 | 9,800.00 | CONSECUTIVE DAYS |
| Monday, October 17, 2011 | PNC | 5563009167 | | | 5,500.00 | | |
| Monday, October 17, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Tuesday, October 18, 2011 | PNC | 5563009167 | | | 8,500.00 | 8,500.00 | CONSECUTIVE DAYS |
| Thursday, October 20, 2011 | BOA | 446007781135 | Illegible | | 700.00 | | |
| Friday, October 21, 2011 | PNC | 5563009167 | | | 7,500.00 | | |
| Monday, October 24, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Thursday, October 27, 2011 | PNC | 5563009167 | | | 4,000.00 | | |
| Friday, October 28, 2011 | PNC | 5563009167 | | | 3,700.00 | | |
| Monday, October 31, 2011 | PNC | 5563009167 | | | 9,990.00 | 9,990.00 | CONSECUTIVE DAYS |
| Tuesday, November 01, 2011 | PNC | 5563009167 | | | 9,950.00 | 9,950.00 | CONSECUTIVE DAYS |
| Friday, November 04, 2011 | PNC | 5563009167 | | | 2,800.00 | | |
| Monday, November 07, 2011 | PNC | 5563009167 | | | 9,990.00 | 9,990.00 | CONSECUTIVE DAYS |
| Tuesday, November 08, 2011 | PNC | 5563009167 | | | 9,990.00 | 9,990.00 | CONSECUTIVE DAYS |
| Monday, November 14, 2011 | PNC | 5563009167 | Illegible | Eastpoint | 9,980.00 | 9,980.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Monday, November 14, 2011 | PNC | 5563009167 | 11:35am | Eastpoint | 4,000.00 | 4,000.00 | SAME DAY / SAME BANK / SAME ACCOUNT |
| Thursday, November 17, 2011 | PNC | 5563009167 | | | 5,500.00 | | |
| Friday, November 18, 2011 | PNC | 5563009167 | | | 3,500.00 | | |

PNC #9167 1-YEAR PRIOR (4/1/11-PRESENT)   $ 703,260.00   $ 569,950.00

**ATTACHMENT C**
**SCHEDULE OF CASH DEPOSITS**
**JANUARY 1, 2010 THROUGH NOVEMBER 18, 2011**

PNC BANK (PNC) ACCOUNT NO.'S 5563009167 (SHUKLA, LLC DBA NORTH POINT LIQUOR & BAR), 5569329866 (SONIA SAINI & SUSHEEL SHUKLA)
BANK OF AMERICA (BOA) ACCOUNT NO.'S 446007751135 (SHUKLA, LLC), 003921627135 (SUSHEEL SHUKLA & SONIA SAINI)
BOA ACCOUNT NO.'S 003921506137 (HARJEET & AMANDEEP MULTANI), 446007811456 (AMANDEEP MULTANI)

| BANK / ACCOUNT NO. | DEPOSIT DATE | TIME | BRANCH | CASH DEPOSIT | INCLUDED AMOUNT | NOTES |
|---|---|---|---|---|---|---|
| PNC x8969 1-YEAR PRIOR (4/1/11-PRESENT) | | | | $ 28,700.00 | $ 28,700.00 | |
| BOA x1135 1-YEAR PRIOR (4/1/11-PRESENT) | | | | $ 2,770.00 | $ 2,770.00 | |
| BOA x1458 1-YEAR PRIOR (4/1/11-PRESENT) | | | | $ 6,978.30 | $ 6,278.30 | |
| | 2011 TOTAL | | | $ 959,681.30 | $ 810,921.30 | |
| | GRAND TOTAL | | | $ 1,923,591.30 | $ 1,605,188.30 | |

osits are included in the warrant application if they are consistently just below the $10,001 CTR reporting requirement threshold (e.g. between $9,000 and $10,000), and/or multiple deposits are made on the same day, consecutive or within a three-day period that when aggregated exceed the $10,000 CTR reporting requirement threshold.

## VERIFICATION

I, Evan T. Shea, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture is based on reports and information furnished to me by the Internal Revenue Service and that everything contained therein is true and correct to the best of my knowledge and belief.

_____

Date

Evan T. Shea
Assistant United States Attorney

4

## MEMORANDUM

DATE:           November 27, 2013

TO:             Deborah Trotter
                Internal Revenue Service

FROM:           Naquita C. Ervin
                FSA Paralegal Specialist
                U.S. Attorney's Office - District of Maryland

RE:             **U.S. v. $28,700 in U.S. Currency**

                **Civil Action No.**
                **CATS ID 12-IRS-001598, 12-IRS-001599 - 1000256765**

        The United States has filed a forfeiture action against **$28,700 in U.S. Currency.**   A copy of the Complaint for Forfeiture is attached.

        Notice of this seizure will be published at **www.forfeiture.gov** pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

        Thank you.


Attachment

1

## Department of the Treasury
*Federal Law Enforcement Agencies*
### PROCESS RECEIPT AND RETURN

| PLAINTIFF<br>UNITED STATES OF AMERICA | COURT CASE NUMBER |
|---|---|
| DEFENDANT<br>**$28,700 in U.S. Currency (Shukla)** | TYPE OF PROCESS<br>Verified Complaint in Rem |

| SERVE<br>AT | Name Of Individual, Company, Corporation, Etc. to Serve or Description of Property to Seize<br>**1000248512/ 12-IRS-001598, 12-IRS-001599** |
|---|---|
| | Address (Street or RFD / Apt. # / City, State, and Zip Code) |

| Send NOTICE OF SERVICE copy to Requester:<br><br>Naquita Ervin, Paralegal Specialist<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland 21201 | Number Of Process To Be<br>Served In This Case. | |
| Number Of Parties To Be<br>Served In This Case. | |
| Check Box If Service Is On USA | |

SPECIAL INSTRUCTIONS or OTHER INFORMATION TO ASSIST IN EXPEDITING SERVICE (includes Business and Alternate Addresses, Phone Numbers, and Estimated Availability times.)

Arrest property. Fill in the date of arrest in this process receipt and return our copy.

| Signature of Attorney or other Originator requesting service on behalf of [ X ]Plaintiff<br>[ ]Defendant | Telephone No.<br>(410) 209-4800 | Date<br>Nov 27, 2013 |
|---|---|---|
| SIGNATURE OF PERSON ACCEPTING PROCESS: | | Date |

### SPACE BELOW FOR USE OF TREASURY LAW ENFORCEMENT AGENCY

| I acknowledge receipt for the Total #<br>of Process Indicated. | District of Origin<br>No. | District to Serve<br>No. | SIGNATURE OF AUTHORIZED TREASURY AGENCY OFFICER: | Date |
|---|---|---|---|---|

I hereby Certify and Return That I [ ] PERSONALLY SERVED, [ ] HAVE LEGAL EVIDENCE OF SERVICE, [ ] HAVE EXECUTED AS SHOWN IN "REMARKS", the Process Described on the Individual, Company, Corporation, Etc., At The Address Shown Above or at the Address Inserted Below.

[ ] I HEREBY CERTIFY AND RETURN THAT I AM UNABLE TO LOCATE THE INDIVIDUAL, COMPANY, CORPORATION, ETC. NAMED ABOVE.

| NAME & TITLE of Individual Served if not shown above: | [ ] A Person of suitable age and discretion then residing in the             defendant's usual place of abode. | | |
|---|---|---|---|
| ADDRESS: (Complete only if different than shown above.) | Date of Service | Time of Service   [ ] AM<br>                          [ ] PM | |
| | Signature, Title and Treasury Agency | | |

REMARKS:

TD F 90-22.48 (6/96)

Make (5) copies after form is signed.   SEND ORIGINAL + 4 COPIES to TREASURY AGENCY.   Retain Copy #5 for your file.